**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 2:12-CR-79 JVB |
| KEVIN WESTON | |

**OPINION AND ORDER**

By the time police searched Defendant's garbage, it had been set out for collection, beyond the curtilage of his home, in a publicly accessible area. As explained further below, these circumstances place Defendant's Motion to Suppress squarely within the holding of *California v. Greenwood*, 486 U.S. 35 (1988), so the Motion must be denied.

**A. BACKGROUND**

The parties agree on the facts: A neighbor anonymously called police in March 2012 to report suspected drug dealing from Defendant's house at 7537 Beech Avenue in Hammond. Dan Young, a Hammond police detective, monitored the location on March 22. The only arguably suspicious activity he observed during his March 22 surveillance was that a visitor spent fewer than five minutes at the house before leaving.

Detective Young's next step in investigating Defendant was to inspect the garbage from the house. He took it from a city-owned trashcan labeled "7537" that stood adjacent to the alley at the edge of Defendant's property. The garbage contained the remains of five marijuana cigars, green marijuana, several plastic baggies with the bottom

corners cut out, and a prescription bottle bearing Defendant's name. The detective's training and experience supported his belief that such baggies are common packaging for retail narcotics. He searched the trashcan from Defendant's home a second time on April 3, 2012, and found another bottle of prescription pills in Defendant's name, the remains of eight marijuana cigars, more baggies with the bottom corners cut out, and green marijuana stems and seeds.

On the basis of this investigation, Detective Young obtained a warrant the next day to search the house and anyone inside. While executing the warrant, law-enforcement agents found a firearm. Defendant waived his *Miranda* rights and then admitted he was a felon and had possessed the gun.

On May 2, a federal grand jury returned a one-count indictment against Defendant, charging him in this case with possession of a firearm as a felon. Defendant has moved to suppress all physical evidence and statements obtained directly or indirectly from the search of the house on grounds that the warrant had issued "based upon probable cause obtained contrary to well-established Indiana case law."

B. ANALYSIS

Defendant's Motion seeks to invoke the exclusionary rule for evidence obtained as a result of a Fourth Amendment violation. *See Weeks v. United States*, 232 U.S. 383, 398 (1914) (barring trial use of such evidence to prove guilt in federal court). He claims the trash searches were Fourth Amendment violations, and all evidence obtained as a result of them should be suppressed as fruit of the poisonous tree.

The Court begins with the leading garbage-search case, *California v. Greenwood*, 486 U.S. 35 (1988). Acting without a warrant, police in that case explored the contents of

sealed, opaque trash bags they obtained from a garbage collector, who had picked them up from the curb in front of defendant Billy Greenwood's house. *Id.* at 37, 39 (maj. op.), 45 (Brennan, J., dissenting) (bags were sealed). Police used the evidence from Greenwood's garbage to obtain warrants to search his house. *Id.* at 38. Those searches revealed still more evidence of drug crime. *Id.* The California trial court, later affirmed by the Court of Appeal, dismissed the charges against Greenwood, ruling that the underlying warrantless trash searches had violated the Fourth Amendment and the state constitution. *Id.* The issue before the Supreme Court was "whether the Fourth Amendment prohibits the warrantless search and seizure of garbage left for collection outside the curtilage of a home." *Id.* at 37.

This turned on whether Greenwood had an expectation of privacy in the discarded garbage that society was prepared to accept as reasonable. *Id.* at 39 (standard derived from *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). He didn't, the Court decided, because the extent to which Greenwood had exposed his trash to the public was too thorough. *Id.* at 40. The Court reasoned that "animals, children, scavengers, snoops, and other members of the public" could readily have accessed the bags, once left on or at the side of a public street. *Id.* "Moreover, respondents[1] placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so." *Id. Greenwood* demonstrates that the Fourth Amendment protects no privacy interest in trash, once discarded for collection beyond the curtilage of the home, even if sealed in an opaque bag. *Id.* at 37–42.

---

[1] The respondent other than Billy Greenwood is irrelevant to the applicability of *Greenwood* to this case.

Relying on *United States v. Jones*, 132 S.Ct. 945 (2012), which held that a Fourth Amendment "search" occurred where law enforcement attached a global-positioning-system device to a vehicle and used the device to track the vehicle's location on public streets, Defendant argues *Greenwood* is no longer good law. It's a tough sell—none of the three Supreme Court opinions in *Jones* even mentions *Greenwood*. Surely if the *Jones* Court had intended to overrule a decision as influential as *Greenwood*, it would have said so.

A passage from Justice Sotomayor's concurrence provides the strongest support for Defendant's interpretation, but it's nowhere near strong enough. In it, Justice Sotomayor expresses openness to reconsidering "the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties." *Jones*, 132 S.Ct. at 957. To be sure, the *Greenwood* majority reaffirmed precisely that premise, which it traced to *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979). *Greenwood*, 486 U.S. at 41. But no other justice joined Justice Sotomayor's opinion. (This is no critique of Justice Sotomayor's opinion, only a demonstration of the absence of any reason to think another justice shares her view.) Moreover, Justice Sotomayor's apparent willingness to reexamine the third-party principle was not essential to her decision to join the *Jones* majority. *See Jones*, 132 S.Ct. at 957 ("Resolution of these difficult questions in this case is unnecessary, . . . because the Government's physical intrusion on Jones' Jeep supplies a narrower basis for decision.").

Defendant also claims *United States v. Redmon*, 138 F.3d 1109 (1998) shows that "through the years the *Greenwood* holding has been chipped away." The Court disagrees. Although some of the dissents treat *Greenwood* as factually distinct, none of the *Redmon*

opinions doubts that *Greenwood* controls every case that does fall within the ambit of its material facts. There is no serious question *Greenwood* remains the law.

And, as the next two paragraphs demonstrate, this case shares all of *Greenwood*'s ultimate facts.

Defendant's admission that the trash in this case was "at the rear of the property, where the property meets the alley" (Gov.'s Resp., DE 32-1, at 2; Def.'s Reply, DE 35-1, at 8 ("[T]here is no dispute as to the facts . . . .")) establishes that the garbage was outside the curtilage. *See United States v. Shanks*, 97 F.3d 977, 979 (7th Cir. 1996) (deeming garbage containers that were next to an alley and a garage beyond the curtilage). None of the four curtilage factors announced in *United States v. Dunn*, 480 U.S. 294, 301 (1987) supports a contrary finding. Here there is no indication Defendant's trashcan was within any enclosure, or that anyone was excluding strangers from the location or shielding it from sight. (The parties have not informed the Court of the distance from the trashcan to the house.) For the same reasons, the trashcan was too publicly accessible to allow a reasonable expectation of privacy under *Greenwood*.

Moreover, Defendant discarded the garbage with the intent to have it collected and removed by a third party, which means he had abandoned it. *See Greenwood*, 486 U.S. at 40 (demonstrating the Fourth Amendment significance of conveying refuse to a third party); *Redmon*, 138 F.3d at 1114 ("We see no reason that . . . abandonment intent should also be abandoned so that it cannot be considered along with other factors in making the Fourth Amendment determination.").

Contrary to the suggestion of some of Defendant's reply brief, it matters no more here than it did in *Greenwood*—which is to say, not at all—whether the police's garbage

searches violated state law. State law can't change the protections of the Fourth Amendment. *See Greenwood*, 486 U.S. at 43–44 (rejecting Defendant's argument).

### C. CONCLUSION

Fourth Amendment analysis often forces difficult choices between liberty and order. The uneasy tradeoff begets impassioned debate, even when it comes to the garbage. Justice Brennan's *Greenwood* dissent predicted "members of our society [would] be shocked to learn that the Court, the ultimate guarantor of liberty, deem[ed] unreasonable our expectation that the aspects of our private lives that are concealed safely in a trash bag will not become public." *Id.* at 45–46. The last three Chief Judges of the Seventh Circuit can be read to echo some discomfort with the *Greenwood* majority's decision. *Redmon*, 138 F.3d at 1123 (Flaum, J., concurring, joined by Easterbrook, J.) ("I do not necessarily share the view of garbage expounded by the Supreme Court . . . ."), 1131 (Posner, C.J., dissenting) ("[O]ne [might not] be unreasonable to be horrified that the archaeologist had been at work reconstructing your life from your garbage . . . ."). Still other venerated American jurists have disfavored the exclusionary rule altogether. *See, e.g.*, Adam Liptak, *Supreme Court Edging Closer to Repeal of Evidence Ruling*, N.Y. Times, Jan. 31, 2009, at A1, *available at* 2009 WLNR 1861817 (identifying a 1983 memorandum by Chief Justice Roberts in furtherance of "the campaign to amend or abolish the exclusionary rule"); *People v. Defore*, 150 N.E. 585, 587 (N.Y. 1926) (opinion of the Court by Cardozo, J.) (lamenting, in a now-familiar quotation, the high social cost of letting a criminal "go free because the constable has blundered").

So in the early 1980s, for example, this might have been a very difficult decision. *Greenwood* makes it simple. *Greenwood* says Detective Young complied with the Fourth

Amendment, and that that's so even if he violated Indiana's constitution. Accordingly, Defendant's Motion to Suppress (DE 23) is **DENIED**.

**SO ORDERED** on September 10, 2012.

 s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE